Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Thursday, March 01, 2007 4:48:55 PM

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE: )
)
RENE A. CHANDLER ) CASE NO. 06-1043
)
Debtor. ) Chapter 7

## MEMORANDUM OPINION

Rene A. Chandler (the "Debtor") claims an exemption in real property that she owns in Wellsburg, West Virginia pursuant to 11 U.S.C. § 522(d). The Debtor, a former domiciliary of Georgia, has not lived in West Virginia for a period of 730 days preceding her Chapter 7 bankruptcy petition. Martin P. Sheehan, the Debtor's Chapter 7 trustee (the "Trustee"), objects to the Debtor's use of the federal exemptions on the basis that the Bankruptcy Code requires the Debtor to use the exemptions provided by the State of Georgia. The Debtor asserts that no prohibition exists to her use of the federal exemptions on the grounds that Georgia's opt-out statute does not apply to her inasmuch as she is not an "individual debtor whose domicile is in Georgia" pursuant to Ga. Code § 44-13-100(b).

The court held a telephonic hearing in this case on January 23, 2007, in Wheeling, West Virginia, at which time the court took the matter under advisement. For the reasons stated herein, the court will overrule the Trustee's objection.

## I. BACKGROUND

The Debtor was a domiciliary[1] of West Virginia for more than 180 days, but less than 730 days

---

[1] For the purposes of 11 U.S.C. § 522, the terms "domicile" and "residence" are not synonymous. 4 *Collier on Bankruptcy* ¶ 522.06 (Alan N. Resnick and Henry J. Sommer eds. 15th

1

preceding her bankruptcy petition. In the 180-day period preceding that 730-day period, the Debtor was a domiciliary of Georgia. After the Debtor moved to West Virginia, she purchased real property in Wellsburg, West Virginia, which has a current value of $20,000, which is not subject to any liens, and which she now seeks to claim as exempt pursuant to 11 U.S.C. § 522(d). The Trustee acknowledges that if the Debtor is allowed to use the federal homestead exemption of $18,450, plus the wildcard exemption of $975, no benefit would exist for the estate in administering the Debtor's property. On the other hand, the Trustee asserts that the applicable Georgia exemption is $10,000. If the Debtor is limited to the use of the Georgia exemption, the Trustee would sell the Debtor's property to benefit the creditors of her bankruptcy estate.

### III. DISCUSSION

The Trustee argues that, pursuant to § 522(b), Georgia has opted out of the federal exemptions provided by § 522(d) in favor of its State law exemption scheme. Because the Bankruptcy Code dictates that the applicable exemption statute for relocating debtors is based on the length of time a debtor is domiciled in a jurisdiction, Georgia law is applicable to the Debtor's claim of exemptions. Moreover, the Trustee asserts, application of Georgia's opt-out provision must uniformly apply to all debtors that are eligible to claim Georgia's exemptions.

The Debtor argues that the Georgia opt-out statute only applies to a statutorily defined Georgia domiciliary; because the Debtor was not a Georgia domiciliary as of the date she filed her Chapter 7 bankruptcy petition, she is not bound by Georgia's opt-out statute.

**A. Georgia's Opt-Out Statute**

Section 522(b)(1) of the Bankruptcy Code allows a debtor to chose between using either a state's exemption statute or the federal exemption statute of § 522(d). In turn, § 522(b)(2) provides that a debtor may use the federal exemptions provided in § 522(d) only if allowed by the applicable state law. Thus, if applicable Georgia law does not require the Debtor to use the Georgia law exemptions, the Debtor may elect to use the federal exemptions provided in § 522(d).

---

ed. rev. 2006) ("The residence of a debtor may be noting more than a place of sojourn . . . . Domicile means actual residence coupled with a present intention to remain there.").

2

Georgia's opt-out statute provides:

(b) Pursuant to 11 U.S.C. Section 522(b)(1), an individual debtor whose domicile is in Georgia is prohibited from applying or utilizing 11 U.S.C. Section 522(d) in connection with exempting property from his or her estate; and such individual debtor may exempt from property of his or her estate only such property as may be exempted from the estate pursuant to 11 U.S.C. Section 522(b)(2)(A) and (B). For the purposes of this subsection, an 'individual debtor whose domicile is in Georgia' means an individual whose domicile has been located in Georgia for the 180 days immediately preceding the date of the filing of the bankruptcy petition or for a longer portion of such 180 day period than in any other place.

Ga. Code § 44-13-100(b).

This Georgia statute mirrored that of 11 U.S.C. § 522(b)(2)(A) before it was amended by the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). Pub. L. 109-8, 119 Stat. 23 (2005). Before its amendment, § 522(b)(2)(A) stated:

(b) [A]n individual debtor may exempt from property of the estate

. . . .

(2)(A) any property that is exempt under . . . State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180 day period than in any other place.

11 U.S.C. § 522(b)(2)(A) (2004).

After its amendment by BAPCPA, the statute now provides:

(b) [A]n individual debtor may exempt from property of the estate

. . . .

(3) . . . (A) . . . any property that is exempt under . . . State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located at a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place.

§ 522(b)(3)(A) (2006).

Thus, as argued by the Trustee, the issue is whether the language used in Georgia's opt-out statute is sufficient to incorporate the changes made to the federal statute such that the longer period for

3

determining a debtor's domicile for the purpose of claiming exemptions would apply. Even assuming that the Georgia opt-out statute is one that incorporates the federal statute by reference,[2] however, the amendments made to former § 522(b)(2)(A) did not similarly amend Georgia's opt-out statute by implication.

Under Georgia law, " '[w]hen a statute adopts a part or all of another statute, domestic or foreign, general or local, by specific and descriptive reference thereto, the adoption takes the statute as it exists at that time.' " *Rich v. State*, 227 S.E.2d 761, 767 (Ga. 1976) (citation omitted). Accordingly, a " 'subsequent amendment or repeal of the adopted statute or any part thereof has no effect upon the adopting statute.' " *Id.* (citation omitted); *see also Boynton v. Lenox Square, Inc.*, 207 S.E.2d 446, 450 (Ga. 1974) (same); *Campbell v. Hunt*, 155 S.E.2d 682, 684 (Ga. Ct. App. 1967) (same); 73 Am. Jur. 2d *Statutes* § 17 (2006) (same).

Consequently, even assuming that the language employed by the Georgia legislature in enacting Ga. Code § 44-13-100(b) with respect to defining "an individual debtor whose domicile is in Georgia" makes the provision a reference statute, the subsequent amendments to 11 U.S.C. § 522(b) made by BAPCPA, which substantively alter the determination of a debtor's domicile for purposes of claiming exemptions, does not alter the meaning of, or language used in Ga. Code § 44-13-100(b). Accordingly, under the plain language of Georgia's opt-out statute, the Debtor in this case is not "an individual debtor whose domicile is in Georgia" because she was not "located in Georgia for the 180 days immediately preceding the date of the filing of the bankruptcy petition or for a longer portion of such 180 day period than in any other place." Because Georgia has not opted-out of the federal exemptions for non-residents like the Debtor, the Debtor is free to use the federal exemptions.[3]  11 U.S.C. § 522(b)(1) (allowing an individual to chose

---

[2] Generally, a "reference statute" is one that refers "specifically to a particular statute by its title or section number." *Campbell v. Hunt*, 155 S.E.2d 682, 684 (Ga. Ct. App. 1967).

[3] In its ruling, the court is in no way suggesting that the Georgia exemptions would be, or would not be, available to the Debtor had she chosen to use them. *Cf.*, *In re Tate*, No. 06-61718, 2007 Bankr. LEXIS 98 (Bankr. D. Ore. Jan. 8, 2007) (concluding that an Oregon debtor could not use the Texas homestead exemption because Texas law limited the availability of the exemption to land situated within the State of Texas); *In re West*, 352 B.R. 905 (Bankr. M.D. Fla. 2006) (holding that a debtor that relocated to Florida was not eligible to use Indiana's exemption statute because Indiana limited its

4

either the applicable state law exemptions, or, if not precluded by applicable state law, the federal exemptions provided in § 522(d)); *In re Battle*, No. 06-50453, 2006 Bankr. LEXIS 3522 at * 3-4 (Bankr. W.D. Tex. Dec. 12, 2006) ("By its own terms, therefore, the [Florida] opt-out applies only to Florida residents. Because the Debtor was not a resident of Florida on the filing date, the Florida opt-out statute does not bar the Debtor from claiming the federal exemptions."); *In re Underwood*, 342 B.R. 358, 361-62 (Bankr. N.D. Fla. 2006) ("The Colorado 'opt-out' statute only prohibits Colorado residents from choosing to claim the federal exemptions. The Debtor is not a resident of Florida, not Colorado. Therefore, even if the Debtor was eligible to claim Colorado exemptions, she could choose instead to claim federal exemptions because no state law prohibition against claiming federal exemptions applies to her.").

**B.     Uniformity**

Recognizing that the court may find that the Debtor is not "an individual whose domicile is in

---

use to Indiana residents); *In re Jewell*, 347 B.R. 120 (Bankr. W.D.N.Y. 2006) (concluding that the "savings clause" after § 522(b)(3) compelled a finding that the exemptions available in the debtor's former state of residence were not applicable because otherwise, the savings clause would be unnecessary); *In re Crandall*, 346 B.R. 220 (Bankr. M.D. Fla. 2006) (holding that the debtor was not entitled to claim New York's exemptions because she was no longer a New York resident and New York's exemptions were limited to residents of that State); *In re Underwood*, 342 B.R. 358 (Bankr. N.D. Fla. 2006) (stating that Colorado exemptions were limited to Colorado residents, and because the debtor was no longer a Colorado resident, she was not eligible to claim the Colorado exemption); *with* 11 U.S.C. § 522(b)(3) ("[T]he debtor may exempt . . . . any property that is exempt under . . . State . . . law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for [the 180 days immediately preceding the 730 days before the filing of the petition]."); *Drenttel v. Jensen-Carter (In re Drenttel)*, 403 F.3d 611 (8th Cir. 2005) (allowing the debtors to use a Minnesota exemption for a Arizona homestead when the debtors moved from Minnesota to Arizona in June 2003, and filed bankruptcy in July 2003); *Arrol v. Broach (In re Arrol)*, 170 F.3d 934 (9th Cir. 1999) (applying a California exemption statute to Michigan real property when the debtor moved to Michigan in November 1996, but filed bankruptcy on January 9, 1997); *In re Battle*, No. 06-50454, 2006 Bankr. LEXIS 3522 at *2-3 (Bankr. W.D. Tex. Dec. 12, 2006) (noting that § 522(b)(3) determines the applicable state's exemption law, which is to be applied to the facts as of the commencement of the case); Laura B. Bartell, *The Peripatetic Debtor: Choice of Law and Choice of Exemptions*, 22 Bankr. Dev. J. 401, 415 (2006) ("The Code is a federal statute, by referring to property designated as exempt under the state law applicable under the language of 522(b)(3)(A), it renders state law applicable. It is Congress, not the state legislature, that has given the state statute 'extraterritorial' effect.").

5

Georgia" under the terms of Georgia's opt-out statute, the Trustee argues that, as a matter of federal law, Georgia is precluded from establishing different rules for exemptions with respect to a current and a former domiciliary.

Section 522(b)(2) of the Bankruptcy Code authorizes a state to opt-out of the federal exemptions contained in § 522(d). 11 U.S.C. § 522(b)(2) ("Property listed in this paragraph is property that is specified under subsection (d), unless the State law that is applicable to the debtor under paragraph (3)(A) specifically does not so authorize."). The federal statute is silent on the issue of whether an individual state may elect to opt-out of the federal exemptions in some instances, and allow a debtor to chose between the federal and state exemptions for other purposes. The court does not believe, however, that any provision of the Bankruptcy Code, or the United States Consitution, constrains a state in the application of its opt-out rights with regards to debtors that have moved out of that state.

The United States Constitution grants Congress the power to "establish . . . uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const. art. I, § 8, cl.4. This uniformity requirement was challenged over 100 years ago after Congress passed a law that made the exemptions in the debtor's state of domicile applicable to bankruptcy proceedings – which meant that the amount or value of property that a debtor could exempt from payment to the debtor's creditors varied greatly from state to state. The Supreme Court, however, upheld that law as not violating the Uniformity Clause:

> We . . . hold that the system is, in the constitutional sense, uniform throughout the United States, when the trustee takes in each State whatever would have been available to the creditors if the bankrupt law had not been passed. The general operation of the law is uniform although it may result in certain particulars differently in different States.

*Hanover Nat'l Bank v. Moyses*, 186 U.S. 181, 189-90 (1902).

Eighty years later, the Supreme Court again discussed the requirement of uniformity, reiterating that perfect uniformity is not required by the Constitution; rather, the Court stated that the uniformity requirement is neither a "straightjacket that forbids Congress to distinguish among classes of debtors," nor does it require the elimination of differences among states to "resolve geographically isolated problems." *Ry. Labor Executives' Ass'n v. Gibbons*, 455 U.S. 457, 469 (1982) (striking down what the Court deemed to be a "private bill" meant only to affect the bankruptcy of a single railroad company). Geographical uniformity and class uniformity are separate concepts, and when a law is applied to a

specified class of debtors, the uniformity requirement is met so long as the law applies uniformly to that defined class of debtors.[4] *Id.* at 473; *see, e.g.*, *Reg'l Rail Reorganization Act Cases*, 419 U.S. 102 (1974) (upholding Congress's power to pass special legislation that applied only to bankrupt railroads). In short, the Uniformity Clause forbids only arbitrary regional differences in the provisions of the Bankruptcy Code, and private bankruptcy bills that are limited to a single debtor. *In re Reese*, 91 F.3d 37, 40 (7th Cir. 1996); *see also* Dan J. Schulman, *The Constitution, Interest Groups, and the Requirements of Uniformity: The United States Trustee and the Bankruptcy Administrator Programs*, 74 Neb. L. Rev. 91, 105 (1995) ("[F]ederal bankruptcy law need not be absolutely uniform as to all debtors . . . . [D]ebtors may be classified and dealt with differently, provided that the bankruptcy statute applies uniformly to a defined class, which must have more than one member.").

In enacting 11 U.S.C. § 522(b)(3)(A), Congress created special exemption rules for a specific class of debtors – those that have relocated from one state to another within a defined period of time. The purpose of creating this separate class of debtors is well articulated:

> The bill also restricts the so-called "mansion loophole." Under current bankruptcy law, debtors living in certain states can shield from their creditors virtually all of the equity in their homes. In light of this, some debtors actually relocate to these states just to take advantage of their "mansion loophole" laws. S. 256 closes this loophole for abuse by requiring a debtor to be a domiciliary in the state for at least two years before he or she can claim that state's homestead exemption; the current requirement can be as little as 91 days.

*Report of the Committee on the Judiciary, House of Representatives, to Accompany S. 256*, H.R. Rep. No. 109-31, Pt. 1, p.15-16, 109th Cong., 1st Sess. (2005); *see also* 14 *Collier on Bankruptcy* Intro.02[2] (Alan N. Resnick & Henry J. Sommer eds. 15th ed. rev. 2006) ("The clear intent of the 2005 amendments is to prevent possible abuse of the bankruptcy process by making it much more difficult for debtors to take advantage of one state's more generous exemptions.").

This court does not believe that creating a separate class of debtors for purposes of claiming

---

[4] *Contra* Robert G. Drummond, *The Exemption Opt-Out: Does it Violate the Constitutional Requirement of Uniformity?* 26 Am. Bankr. L. J No.1, p. 10 (Feb. 2007) (arguing that strict geographic uniformity is required in the application of exemption laws).

exemptions based on the length of time such debtors have lived in a particular state violates the Uniformity Clause of the United States Constitution because: (1) the law is uniformly applicable to any debtor that relocates from one state to another; (2) the class of debtors ensnared by § 522(b)(3)(A) is well defined; (3) it is not a private bankruptcy bill; and (4) the classification is not arbitrary inasmuch as the classification is a Congressional attempt to prohibit debtors from moving to a new state for the purpose of filing bankruptcy.

Finding that § 522(b)(3)(A) does not violate the Uniformity Clause of the United States Constitution, however, only resolves part of the issue raised in this case – the Trustee argues that the Uniformity Clause is violated by the fact that § 522(b)(3) requires the Debtor to utilize the exemptions available to her in her former state of domicile, Georgia, but due to the application of Georgia law, the Debtor would not be bound by the opt-out statute that binds all other persons whose domicile is in Georgia. The court disagrees.

As the Supreme Court has proclaimed, a state enjoys broad rights in fashioning its exemption laws. *Owen v. Owen*, 500 U.S. 305, 308 (1991) ("Nothing in subsection (b) (or elsewhere in the Code) limits a State's power to restrict the scope of its exemptions; indeed, it could theoretically accord no exemptions at all."); *see also* 4 *Collier on Bankruptcy* ¶ 522.02[2] ("While this statement [in *Owen*] is dictum, it clearly reflects the Court's view of the scope of a state's power both to opt out of the federal exemption system of section 522(d) and to limit dramatically its own citizens' exemption rights."). Many states already have laws that allow citizens to choose between the federal exemptions of § 522(d) of the state's list of exemptions. *E.g.*, 14 *Collier on Bankruptcy, Exemptions*, Intro.02 n.16 (listing the states that have opted out of the federal exemptions of § 522(d)).

By negative operation of Georgia's opt out statute, the Debtor is allowed to chose the federal exemptions of § 522(d). The court ascertains no Uniformity Clause violation for states that allow their citizens to chose between the federal and state exemption statutes, and likewise ascertains no Uniformity Clause violation should a state restrict the application of its opt-out provision to those that are currently domiciled in that state as opposed to those who are currently domiciled in another state.

### III. CONCLUSION

The court will enter a separate order pursuant to Fed. R. Bankr. P. 9021 that overrules the

Trustee's objection to the Debtor's claim of federal exemptions.